## WOOD *v.* GORDON.

(*City Court of New York, General Term.* March 10, 1891.)

1. PLEADING—ANSWER—NEW MATTER REQUIRING REPLY.

When new matter in an answer approaches too closely the boundary line between new matter constituting an affirmative defense and new matter setting forth a counter-claim, the pleader should label his plea to require a reply without order of court. Defendant's prayer for affirmative equitable relief will not alone be sufficiently explicit to force a reply, but he must characterize his plea as a counter-claim before he can successfully complain of plaintiff's failure to demur or reply.

2. REFORMATION OF LEASE—MISTAKE—EVIDENCE.

Defendant occupied premises until September 29, 1890, under a lease, which recited a letting "from September 15, 1889, to September 1, 1890," to pay "said yearly

rent." Upon the back was indorsed: "Lease dated August —, 1889. Term, twelve and ½ months. Begins September 15, 1889. Terminates September 1, 1890. Annual rent, $600." In an action against defendant as a tenant holding over, he alleged in his answer that the lease was not drawn to express the real agreement, which was a leasing for twelve and a half months, and asked that it be modified. But he testified that he signed such lease supposing it a lease for one year,—from September 15th to September 15th,—and subsequently, discussing the mode of paying rent, said to plaintiff's agent, "My term is still twelve and a half months, is it not?" to which the agent assented. *Held,* that the evidence was insufficient to entitle defendant to have the lease reformed so as to express a term of twelve and a half months from September 15th.

Appeal from special term.

Argued before EHRLICH, C. J., and VAN WYCK, J.

*James P. Campbell,* for appellant. *Chas. De Hart Brower,* for respondent.

VAN WYCK, J. This is an appeal by defendant from a judgment entered upon a verdict directed against him by the court. The action was against defendant as tenant holding over after the expiration of his term as fixed in a written lease under seal, which contained the following recitals: That the premises are let "from September 15, 1889, to September 1, 1890;" to pay "said yearly rent," and "on paying said yearly rent." Upon the back of the lease is indorsed: "Henry A. Wise Wood to Edward Gordon. Lease dated August —, 1889. Term, twelve and ½ months. Begins September 15, 1889. Terminates September 1, 1890. Annual rent, $600." The answer denies all the allegations of the complaint, and, among other things, affirmatively alleges that the written lease, which was signed by defendant, was drawn and prepared by plaintiff's agent, who, at the time that it was signed by defendant, stated to him that it was a lease for the term of twelve and a half months, and that upon such assurance he accepted the lease, occupied the premises, and paid the rent; and the answer prays that any written instrument expressing any different term of hiring be modified so as to express the real agreement. At the opening of the trial, defendant moved for judgment on the pleadings; upon what ground does not appear from the record, but his points indicate that it was for failure of plaintiff to reply or demur to the answer. This motion was properly denied. It seems safe to say that a rule has been established which requires that when the new matter, as set forth in an answer, approaches too closely the line—by no means distinctly visible at all times—called the "boundary line" between new matter constituting an affirmative defense and new matter setting forth a counter-claim, the pleader must label his plea, if he desires or expects a reply without an order from the court; and so, too, it is held that the defendant's prayer for affirmative equitable relief will not alone be sufficiently explicit to force a reply, but that he must characterize his plea as a counter-claim before he can successfully complain of the plaintiff's failure to demur or reply. This rule, which is enforced against the defendant to prevent his technical effort for judgment without trial, will be turned to his aid when he is met at trial by the plaintiff's objection to his giving proofs of his allegations in order to secure his affirmative equitable relief; for he will then be allowed to make such proof, and obtain such relief, notwithstanding that he has not labeled his plea as a counter-claim. Another complaint from this defendant is that he was not allowed to go to the jury. The trial judge was very considerate of defendant's interest, and allowed him to give evidence to substantiate his contention, and, after hearing him, assumed control of the case, and properly directed a verdict against him. Mr. Brower, who is the person alleged in the answer to be the agent by whom the lease was drawn and prepared, testifies that he was the plaintiff's agent in the management of this house and two others; that he drew and prepared the lease in question, and that he did not have authority to sign it for plaintiff, who signed it in person, and handed it to him to deliver to defendant. If this testimony should be absolutely eliminated from

the case, all evidence of authority by Mr. Brower to act for plaintiff would disappear, and, if allowed to stand, it would prove affirmatively that he had no authority to sign the lease, and, of course, none to alter or modify it; and if he had done so in writing, and by express terms, it could not avail the defendant, in the absence of knowledge by plaintiff. An examination of defendant's testimony had best be made by quoting from it quite fully. The defendant says that he saw Mr. Brower but twice,—first on September 3, 1889, and again on 11th of the same month,—and continues: "Upon the 3d of September I called upon Mr. Brower,. * * * and told him I was the party who had rented the flat. * * * Then he [Brower] produced a form of lease dated August 15, 1889, to run to September 1, 1890. It was to run from August 15, 1889, to September 1, 1890. I said to Mr. Brower that I had not rented the flat from Mr. Judge for that term; that I had taken the lease of it for one year from September 15, 1889, to September 15, 1890. Mr. Brower said: 'You had better let me give it to you from the first.' I said; 'No, sir; my rent is paid where I am occupying until September 15th, and I will take from September 15th to September 15th.' He said: 'All right; I will have the lease altered to that effect.'" So it comes from defendant's own lips that his understanding was that his term was to expire on September 15, 1890, and yet he does not vacate the premises until September 30th, fifteen days after the term was to expire, as he originally understood it; and now he seeks by what in its nature is a suit in equity to reform the lease by having it read so that the term will have expired, not on September 15, but on October 1, 1890, one day after he vacated the premises. The defendant continues in his testimony: "And the next interview I had with him [Brower] was upon the 11th of September, when I went to his office, and laid my check for $50 upon his desk, and said: 'There is the first month's rent;' and then, without looking at the lease, signed the lease." Taking the defendant's testimony as true down to this point, it would follow that he then thought he had signed a lease without reading it, which made his term for 12 months,— that is, from September 15, 1889, to September 15, 1890,—and had paid his rent for the first month. The defendant's testimony continues: "After I had the lease signed, Mr. Brower said: 'Mr. Gordon, I make it a practice to collect all my rents upon the first of the month. So that I can have matters straightened out by the 15th of October, you will send me your check for $25, which is for a half month's rent.' I said: 'Mr. Brower, that would still constitute that half.' He said: 'Yes, that would still constitute that half month.' I said to him: 'My term is still twelve and a half months, is it not?' He said. 'Yes.'" It appears from his testimony that a moment before, when he signed the lease, he thought it had been drawn in accordance with his instructions of September 3d, and that his term was for 12 months. Defendant's testimony continues: "I then picked up the lease and looked at it, and said: 'That is not stated here.' Then he called my attention to the back of the lease, and said: 'But it is so stated there. This is simply an agreement or paper which forces you to keep the flat for not less than one year.'" Of course all of this is denied by Mr. Brower. The defendant certainly has not made out a case which would justify either court or jury in determining that he was entitled to have the written lease so modified or reformed as to read that the letting and hiring was for a term of twelve and a half months, *i. e.*, from September 15, 1889, to October 1, 1890, instead of a term from September 15, 1889, to September 1, 1890, as is expressly recited in the lease. The defendant admits that he held and occupied the premises until September 30, 1890, which was 30 days after the term provided for in the lease had expired; and hence was what is called a "hold-over tenant," and, upon the landlord's election, is liable for the month's rent of $50 sued for. Judgment affirmed, with costs.